**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIAN HAYES, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-393 |
| | : | |
| LT. MICHAEL CHITWOOD, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

BUCKWALTER, S.J.                                    December  19, 2007

        Presently before the Court are Defendants' Motion for Summary Judgment

pursuant to Fed. R. Civ. P. 56 (Docket No. 30) and Plaintiff's Response thereto (Docket No. 32).

For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

**I.  BACKGROUND**

        This case arises out of the arrest of Plaintiff Julian Hayes on January 27, 2004,

after which he was charged with attempted murder, assault, robbery and other crimes relating to

the shooting of his brother, Jackson Hayes ("Jackson").  Two weeks prior to Plaintiff's arrest, on

January 13, 2004, Jackson was robbed at gunpoint and shot in the left cheek.  (Pl.'s Mem. Resp.,

Ex. 1.)   A Philadelphia police officer arrived at the scene minutes later and took a description of

the assailant, in which Jackson described the assailant as a male between 5'10" and 6'1" tall.  (Id.)

Jackson was transported to University of Pennsylvania Hospital where he received a tracheotomy

and was treated for severe injuries.  (Defs.' Mem. Supp. Summ. J. 2, Ex. 4.)  While at the

hospital, Jackson was unable to speak due to the tracheotomy, and thus he wrote down

investigative information for the detectives.  (Pl.'s Mem. Resp. 3.)  Jessie Hayes, Jackson and

Plaintiff's mother, was present at this time and later relayed to the family's pastor that Jackson

had told a detective he was shot by his brother Arnett from Florida.  (Pl.'s Mem. Resp. 3, Ex. 2.)

The hospital discharge records for Jackson, however, indicate that Jackson's family had

communicated to the hospital staff that they believed Jackson had been "set up" by his brother

Julian (Plaintiff) who had allegedly been threatening Jackson prior to the incident and who had

assaulted a third brother, Jerome Hayes, on December 17, 2003.  (Defs.' Mem. Supp. Summ. J.,

Ex. 5, 6, 7.)

On January 27, 2004, Jackson was released from the hospital and later voluntarily

appeared at the Southwest Detective Division Headquarters with his father.  (Defs.' Mem. Supp.

Summ. J. 3, Ex. 8.)  Jackson then gave a statement to Defendant Detective Patrick Smith

regarding the shooting on January 13, 2004, in which he identified his attacker and shooter as his

brother Plaintiff Julian Hayes.  (Defs.' Mem. Supp. Summ. J. 3, Ex. 9.)  Jackson and his father

also informed Defendant Smith that Plaintiff had been causing problems with other family

members, including the incident several weeks earlier where Plaintiff assaulted his other brother

Jerome Hayes.[1] (Defs.' Mem. Supp. Summ. J., Ex. 8.)  Based on this information, the Defendant

Officers contacted an informant to learn of Plaintiff's whereabouts, and were told that Plaintiff

was in a blue Cadillac and soon to be involved in a drug deal at the corner of 49th Street and

Chester Avenue in Philadelphia.  (Defs.' Mem. Supp. Summ. J. 4, Ex 1.)  The Defendant

Officers set up surveillance at that location and minutes later observed Plaintiff in the passenger

_____

1.  Plaintiff was ultimately convicted of aggravated assault and is currently serving a sentence of four to eight years.
(Defs.' Mem. Supp. Summ. J., Ex. 12, Julian Hayes Dep. 32:9-17, May 11, 2007.)

seat of a blue Cadillac.  (Id.)  The Defendant Officers signaled for the Cadillac to pull over and thereafter arrested Plaintiff without incident.  (Pl.'s Mem. Resp. 3.)  No drugs were recovered at the scene or on Plaintiff's person.  (Id.)

Plaintiff was charged with attempted murder, robbery, aggravated assault, simple assault, reckless endangerment, possession of an instrument of a crime, and several firearms offenses, all stemming from the incident on January 13, 2004, when Jackson was shot and robbed. (Defs.' Mem. Supp. Summ. J. 4, Ex. 2.)  Plaintiff asserts that Defendant Lieutenant Chitwood retrieved Plaintiff's house keys and ransacked his residence the day of Plaintiff's arrest, and while he was in custody, despite not executing a search and seizure warrant until the following day, January 28, 2004.  (Pl.'s Mem. Resp. 6.)

A preliminary hearing was held on March 11, 2004, where Jackson testified that it was his brother Plaintiff who had shot him in the face.  (Defs.' Mem. Supp. Summ. J. 4, Ex 10.)  Plaintiff was held over for trial on all charges related to Jackson's shooting, and later sat for a bench trial in October 2004 in front of the Honorable Karen Shreeves-Johns of the Philadelphia Court of Common Pleas.  (Defs.' Mem. Supp. Summ. J. 5, Ex 11.)  On October 13, 2004, Plaintiff was acquitted on all charges related to his brother Jackson's shooting.

Plaintiff, acting pro se, instituted the present cause of action on March 27, 2006, asserting claims of false arrest, false imprisonment, excessive force, and malicious prosecution pursuant to 42 U.S.C. §1983 against the City of Philadelphia, Philadelphia, the Philadelphia Police Department, Lt. Michael Chitwood, Det. Patrick Smith, Det. Greg Singleton, and Det. Michael Wisniewski.  The majority of Plaintiff's claims were previously dismissed by the Court

3

based on the applicable statute of limitations, leaving Plaintiff's malicious prosecution claim as the only remaining claim.  The Defendants now move for summary judgment on this final claim.

## II.  STANDARD

A motion for summary judgment will be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Because a grant of summary judgment will deny a party its chance in court, all inferences must be drawn in the light most favorable to the party opposing the motion.  U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The ultimate question in determining whether a motion for summary judgment should be granted is "whether reasonable minds may differ as to the verdict."  Schoonejongen v. Curtiss-Wright Corp., 143 F.3d 120, 129 (3d Cir. 1998).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

After the moving party satisfies its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256-57.  Rule 56 of the Federal Rules of Civil Procedure requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has

4

failed to make a sufficient showing on an essential element of her case with respect to which she

has the burden of proof." Id. at 323.

## III.  ARGUMENT

### A.  Malicious Prosecution

Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983 asserting

malicious prosecution in violation of his Fourth Amendment rights.

> To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  Plaintiff is unable to satisfy all of

the above elements, and thus his malicious prosecution claim fails as a matter of law.

In analyzing Plaintiff's malicious prosecution claim, two of the five elements are

clearly present.  Plaintiff was acquitted of all charges relating to the shooting of his brother,

thereby satisfying the second element requiring the criminal proceeding to have ended in

Plaintiff's favor.  Likewise, Plaintiff was incarcerated while awaiting trial, thereby satisfying the

fifth element requiring Plaintiff to have suffered a deprivation of liberty as a consequence of a

legal proceeding.  Defendants now contend that Plaintiff has failed to establish elements one,

three, and four.

### 1.  The Proceeding Was Initiated with Probable Cause.

Plaintiff has failed to provide evidence that the proceedings were initiated without

probable cause.  "An arrest by a law enforcement officer without a warrant 'is reasonable under

the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed.'" Wright v. City of Phila., 409 F.3d 595, 601 (3d Cir. 2005) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "A Court must look at the 'totality of the circumstances' and use a 'common sense' approach to the issue of probable cause." Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (quoting States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984)). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (citing Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)). "An arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstance within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" Wright, 409 F.3d at 602 (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "When a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." Sharrar, 128 F.3d at 818.

    Plaintiff claims that Defendants Smith, Singleton, Wisniewski, and Chitwood initiated the proceedings without probable cause. Specifically, Plaintiff argues that the arresting officers disregarded the fact that the Police Incident Report, dated January 16, 2004, listed Jackson's attacker as between 5'10" and 6'1" tall when they knew Plaintiff's height was only 5'7". Plaintiff contends that Defendants should have investigated Plaintiff further before arresting him based solely on Jackson's identification of him as his attacker two weeks after the assault occurred. (Pl.'s Mem. Resp. 3.) Plaintiff further argues that, at the hospital just after being shot, Jackson communicated to detectives that he recognized his attacker as his brother Arnett from

6

Florida.  (Id.)  Plaintiff contends that this statement was made in the presence of Jessie Hayes

(Plaintiff's mother), who subsequently relayed this information to the family's pastor.[2]  (Id.)

Plaintiff argues that this knowledge, coupled with the discrepancy between Plaintiff's actual

height and that listed of the attacker in the Police Incident Report, was sufficient to warrant

further investigation by Defendants before having the requisite probable cause to proceed with

Plaintiff's arrest.

        Looking at the totality of the circumstances, and drawing all facts in a light most

favorable to Plaintiff, it is clear that Defendants had probable cause to arrest Plaintiff and initiate

charges of attempted murder, assault, and firearms violations.  While the height discrepancy and

Jackson's written communication at the hospital exculpates Plaintiff, these facts do not overcome

a finding of probable cause when viewing all the information available to Defendants at the time.

See Wilson, 212 F.3d at 790 (holding that "a positive identification by a victim witness, without

more, would usually be sufficient to establish probable cause, [but] this qualified precept cannot

be rendered absolute.  Independent exculpatory evidence or substantial evidence of the witness's

own unreliability that is known by the arresting officers could outweigh the identification such

that probable cause would not exist.  Each case must therefore be examined on its facts").  The

facts at hand, including the strength of Jackson's identification—identifying his brother as his

attacker on the day he exited the hospital—combined with statements from Plaintiff's

family—that Plaintiff had recently assaulted his other brother Jerome—are clearly sufficient to

---

2.  Plaintiff has provided a letter from his pastor identifying Arnett from Florida as the relative that Jessie Hayes
mentioned Jackson spoke of while in the hospital.  (Pl.'s Mem. Resp., Ex. 2.)  The pastor states that, "the statement
was made in the hospital but I don't know who to, although I was told that a police officer did try to interview him at
the hospital but opted to wait until medication wore off."  There is no other language in the letter to place the context
in which Arnett's name was mentioned, but for the purposes of summary judgment, the Court will infer that it was in
the context of Jackson identifying his attacker.

establish a fair probability that Plaintiff committed the crime, even given the exculpatory information.  With respect to the height in the incident report, the Court does not find a discrepancy of three to six inches to be material under the circumstances.  As to the statements made the day of the shooting, Jackson had just been shot and was unable to speak due to a tracheotomy.  Furthermore, when he met with Defendants the day of his release from the hospital, Jackson stated that he did not recall communicating to the police the day of his shooting, but stated that he would have identified Plaintiff as his attacker if he did.  (Defs.' Mem. Supp. Summ. J. 11, Ex 9.)  It is clear that, when viewing the totality of the circumstances, Defendants had probable cause to arrest Plaintiff.

> **2.  Defendant Officers Did Not Institute Criminal Proceedings Against Plaintiff.**

Plaintiff has failed to provide evidence of Defendant Officers having initiated the criminal proceedings.  "In most circumstances, a plaintiff can not proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings against an individual."  Harris v. City of Phila., 97 cv 03666, 1998 WL 481061 at *5 (E.D. Pa. Aug, 21, 2001) (citing Albright v. Oliver, 510 U.S. 266, 279 n.5 (1994)).  A police officer may, however, be "held to have 'initiated' a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion."  Id. (citing Reed v. City of Chi., 77 F.3d 1049, 1053 (7th Cir. 1996)).

In the present case, Plaintiff has provided no evidence suggesting Defendant Officers knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's discretion.  The Criminal Complaint is sworn out by the District Attorney's Office,

evidencing that it was indeed the prosecutor who had determined to proceed.  (Defs.' Mem.

Supp. Summ. J., Ex. 2.)   Furthermore, the information Defendants relied on in finding probable

cause was reaffirmed by Jackson's own testimony at the preliminary hearing and verified in

Plaintiff's medical records.[3]  In light of this evidence and the lack of any evidence to the contrary,

there is simply no basis for finding that Defendant Officers initiated the criminal proceedings or

otherwise interfered with the prosecutor's discretion.

### 3. Defendants Did Not Act Maliciously or for a Purpose Other than Bringing Plaintiff to Justice.

Plaintiff has also failed to provide any evidence of Defendants having acted

maliciously or for a purpose other than bringing Plaintiff to justice.  Plaintiff first contends that

Defendant officers had a "personal vendetta" against him after Defendants Smith and Chitwood

arrested Plaintiff five months prior for charges that were ultimately dropped.  The only evidence

Plaintiff provides to support this allegation of a "personal vendetta" is Defendant Chitwood's

interrogatories, where Chitwood (a) answered "No" when asked if he had ever arrested Plaintiff

prior to January 27, 2004, and (b) answered "this interrogatory is vague and overbroad" when

asked if he had read the incident report dated January 13, 2004.  (Pl.'s Mem. Resp., Ex. 4.)

Secondly, Plaintiff argues that Defendants admitted his arrest was premised on an

informant's tip of a narcotics transaction involving Plaintiff, and the fact that no narcotics were

found is evidence of Defendants having acted with malice in fabricating a reason to arrest

Plaintiff.  (Pl's Mem. Resp. 12.)  Plaintiff also makes the argument that there was no probable

---

3.  See Defs.' Mem. Supp. Summ. J., Ex. 5.

cause to arrest him, and thus "[m]alice may be inferred from the absence of probable cause." (Pl.'s Mem. Resp. 9 (citing <u>Lippay v. Christos</u>, 996 F.2d 1490, 1502 (3d. Cir. 1993)).)

The Court finds these allegations to be unsubstantiated and therefore insufficient to survive summary judgment. The evidence presented by Plaintiff to support this claim is questionable at best, and does little to dampen the previous determination that Plaintiff's arrest was based on probable cause. (<u>See</u> <u>supra</u> Part III.A.1.) Defendant Chitwood's interrogatory answers do nothing to establish any "personal vendetta" against Plaintiff, or any malicious intent for that matter. Likewise, the fact that no narcotics were found on Plaintiff at the time of his arrest is also immaterial. As reflected by the charges and subsequent trial, Plaintiff was arrested for robbing and shooting Jackson; the informant's information was used by Defendants only as a means to locate and arrest Plaintiff. Therefore, Plaintiff has clearly failed to establish any evidence of malicious intent on Defendants' part.

For the above reasons, Plaintiff has failed to establish the elements necessary for a claim of malicious prosecution under section 1983. Accordingly, summary judgment is appropriate.

**B. Qualified Immunity**

Defendant Officers are also entitled to summary judgment based on qualified immunity. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege is "an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Ibid. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

Saucier v. Katz, 533 U.S. 194, 200-01 (2001). As a result of Saucier, courts now follow a two-step process for evaluating claims of qualified immunity in a suit alleging a violation of a constitutional right. First, the court must determine whether the facts, taken in the light most favorable to Plaintiff, show the officer's conduct violated a constitutional right. Id. at 201. If the facts fail to establish a constitutional violation, the officers are entitled to qualified immunity. Id. If, however, the facts demonstrate evidence of a constitutional violation, the second step is for the court to determine whether the right was clearly established. Id. "This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition." Id. Thus, the second step amounts to looking at the specific factual scenario established by Plaintiff and determining whether a reasonable officer would have understood that his conduct was unlawful. Bennett v. Murphy, 274 F.3d 133, 136 (3rd Cir. 2001); Saucier, 533 U.S. at 202. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202 (citing Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In the present matter, both inquiries of Saucier weigh against Plaintiff. First, because there was probable cause, there is no evidence of a violation of a constitutional right. Plaintiff cites numerous cases from other circuits where qualified immunity has been denied as a result of arrests based on probable cause where the arresting officers failed to reasonably

11

investigate exculpatory evidence.  See, e.g., Gardenhire v. Schubert, 205 F.3d 303 (6th Cir.

2000); Kuehl v. Burtis, 173 F.3d 646, 651 (8th Cir. 1999) (qualified immunity denied when

officer, inter alia, ignored plainly exculpatory evidence negating intent and refused to interview a

key eye-witness.); Golino v. City of New Haven, 950 F.2d 864, 871-72 (2d Cir. 1991) (denying

qualified immunity when arresting officers deliberately omitted contrary eye-witness

descriptions, non-matching fingerprints, and additional exculpatory evidence from arrest warrant

affidavit).

       In the present case, as previously discussed, the totality of the circumstances

justified a finding of probable cause.  See Vazquez v. Rossnagle, 31 Fed. Appx. 778, 779 (3d Cir.

2002) (holding that once there is sufficient probable cause, there is no need for additional

investigations, thereby affirming summary judgment on grounds of probable cause and qualified

immunity); Wilson, 212 F.3d at 791-92 (finding that the exculpatory facts [of the case], when

weighted against the inculpatory facts, were not strong enough to undermine a finding of

probable cause); Merkle v. Upper Dublin, 211 F.3d 782, 790 (3d Cir. 2000) (An officer "was not

required to undertake an exhaustive investigation in order to validate the probable cause that, in

his mind, already existed.").

       Second, even assuming that there was in fact no probable cause to arrest

Plaintiff—thus establishing a violation of Plaintiff's constitutional rights and forcing the

application of Saucier's second inquiry—a reasonable officer faced with the same set of facts

would not have understood his conduct to be unlawful.  Defendant Officers had a statement from

the victim identifying Plaintiff as his attacker, and knowledge of a previous incident in which

Plaintiff had assaulted his brother Jerome Hayes.  As previously stated, the Court does not find a

height discrepancy of three to six inches and a communication made within hours of a gun shot wound to the face (and while shortly after receiving a tracheotomy) to be substantial enough to warrant further investigating prior to a reasonable officer believing to have sufficient probable cause.  Therefore, Defendant Officers are entitled to qualified immunity.

### C.  Municipal Liability

Plaintiff's claim against Defendant City of Philadelphia also fails as a matter of law.  In the seminal case of <u>Monell v. Department of Soc. Serv.</u>, 436 U.S. 658 (1978), the United States Supreme Court confirmed that "Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies," but emphasized that, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." <u>Id.</u> at 690-91.  To establish section 1983 liability on such a governing body, the plaintiff must identify either a "policy, statement, ordinance regulation or decision officially adopted and promulgated by that body's officers." or "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels."[4]  <u>Id.</u>  The Third Circuit refined these definitions and explained that policy or custom may be established (1) "[w]hen a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict" or (2) through a "course of  conduct . . .when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law."  <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990).

---

4.  Who is a policymaker is a question of state law.  <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112, 142 (1988).  "In looking to state law, a court must determine which official has final, unreviewable discretion to make a decision or take an action."  <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1481 (3d Cir. 1990).

In the present case, Plaintiff has not produced any evidence to support a claim against Defendant City of Philadelphia.  Likewise, Plaintiff has not produced any evidence that Defendant City of Philadelphia had a pattern or practice of violating the constitutionally protected rights of citizens.  Therefore, Plaintiff's claim against Defendant City of Philadelphia fails as a matter of law.

**IV.  CONCLUSION**

For the reasons stated above, Defendants are entitled to summary judgment.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JULIAN HAYES, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 06-393 |
| | : | |
| LT. MICHAEL CHITWOOD, et al., | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

**AND NOW**, this 19th day of December, 2007, upon consideration of Defendants'

Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Docket No. 30) and Plaintiff's

Response thereto (Docket No. 32), it is hereby **ORDERED** that Defendants' Motion for

Summary Judgment is **GRANTED**.  Judgment is entered in favor of Defendants City of

Philadelphia, Philadelphia Police Department, Lt. Michael Chitwood, Det. Patrick Smith, Det.

Greg Singleton and Det. Wisniewski and against Plaintiff.

This case is **CLOSED**.

BY THE COURT:


*s/ Ronald L. Buckwalter, S. J.*
RONALD L. BUCKWALTER, S.J.